IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE JAMES MADISON PROJECT, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:22-cv-00092-JMC |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |

## JOINT STATUS REPORT

The parties, by counsel, respectfully submit this Joint Status Report in response to the Court's July 13, 2022 Minute Order.

1.  Plaintiffs seek records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, from the Federal Bureau of Investigation ("FBI") and the DOJ Office of the Inspector General ("OIG") related to the investigation and prosecution of Mr. Michael Cohen.

2.  The OIG has completed its search and identified no responsive documents. On March 10, 2022, the OIG provided its final response to Plaintiffs' request. The parties have conferred regarding questions raised by Plaintiffs to see if they can narrow the scope of the parties' dispute. On December 28, 2022, the OIG provided Plaintiffs with a response to Plaintiffs' most recent position. Plaintiffs are considering OIG's response.

3.  The FBI has completed its search for Plaintiffs' request. As reported previously, the FBI's search initially identified over 450,000 pages of potentially responsive material. The parties conferred and Plaintiffs agreed to waive the search for and processing of any grand jury material. After FBI separated out the grand jury material, the approximate volume dropped to

approximately 47,000 pages of potentially responsive pages in need of review.[1] The FBI has finished loading the narrowed set of potentially responsive pages into the system used for review and processing.

4. At Plaintiffs' request, the FBI agreed to prioritize the processing of FD-302s, the forms used by the FBI to record investigative activity, without prioritizing at this point the attachments or media associated with FD-302s. The parties have agreed to postpone FBI's processing of all attachments and media, with the plan to revisit the processing of attachments and media after the parties have a better sense of what those records might contain.

5. The FBI has been processing the potentially responsive records, starting with the prioritized FD-302s, on a rolling basis at a rate of 500 pages per month. The FBI completed its review of the first 500 pages by August 22, 2022, as directed by the Court in its Minute Order dated July 13, 2022, and it has provided Plaintiffs with its interim response by letters dated August 22, September 22, October 21, November 22, and December 22, 2022, as well as January 20, and February 22, 2023. As identified in each of its interim response letters, the FBI has referred responsive records to other agencies or offices for required consultations. The FBI is awaiting those responses before a final decision regarding the release or withholding of this material is made.

---

[1] The FBI's FOIA Vault contains over 5,000 pages of prior, publicly available FOIA releases of Special Counsel Mueller's investigation records, which includes material that is at least partially responsive to the subject matter of Plaintiffs' FOIA request. *See* FBI FOIA Vault, available at https://vault.fbi.gov/special-counsel-mueller-investigation-records. Although Plaintiffs' FOIA request excludes publicly available records, the FBI has (re)reviewed certain pages that are publicly available on the FBI's FOIA Vault to see if the FBI's prior FOIA releases withheld privacy information that the FBI could release because of the privacy waiver from Michael Cohen submitted with this request.

6. On January 5, 2023, following a status hearing, the Court entered two Minute Orders. The first Minute Order directed the FBI to inquire into "the feasibility of identifying the number and names of agencies to which documents were referred," as well as into "the feasibility of determining (1) how many FD-302s are under review, and which pertain to Michael Cohen; (2) whether these documents have been sent to other agencies for referral/consultation, and the date upon which a response is anticipated; and (3) when all non-exempt portions of the FD-302s will be released." 1st Minute Order, dated Jan. 5, 2023. The second Minute Order directed the government "to provide the information mentioned in th[e] Court's previous 1/5/2023 Minute Order via declaration by February 17, 2023." 2d Minute Order, dated Jan. 5, 2023.

7. On February 17, 2023, in response to the Court's Orders, the FBI submitted the Declaration of Joseph E. Bender, the Acting Section Chief for the FBI's Record/Information Dissemination Section (RIDS). ECF No. 17, Notice of Filing Agency Declaration; *see also* ECF No. 17-1, Declaration of Joseph E. Bender, Jr. ("Bender Decl.").

8. Acting Chief Bender explained that "the FBI has sent 40 consultation / coordination requests to 25 Other Government Agencies (OGAs), some of whom have overlapping equities in the same records." Bender Decl., ¶ 4.[2] Acting Chief Bender also explained his determination that "it is not feasible for the FBI to disclose to Plaintiffs the 25 OGA names at this juncture given the sensitivities of the OGA equities in the records subject to the FBI's pending coordination/consultation requests, including the significant law enforcement, national security, and intelligence concerns implicated by the presence of particular IC or law

---

[2] Acting Chief Bender also provided for the Court an explanation of the FBI's processing distinctions between referrals, consultations, and/or coordination. *See* Bender Decl., ¶¶ 4, 8-14.

3

enforcement agency information in them." *Id.* ¶ 5. He emphasized that "[i]t is critical for the FBI to receive responses from the OGAs regarding the records at issue before releasing the OGA's identifies to account for the sensitivities of the records and OGA information involved," especially because "the mere involvement of one or more OGAs may be determined to be a classified fact, or disclosure of the OGA's involvement could reveal sensitive, exempt information." *Id.*

9. As to the FD-302s that the FBI prioritized at Plaintiffs' request, Acting Chief Bender said there are "727 pages of potentially responsive FD-302s" under review and all 727 pages "pertain to Michael Cohen." *Id.* ¶ 6. These pages have all been sent to OGAs as part of the FBI's consultation/coordination requests, and the FBI is "waiting for responses to those requests before it can make a final determination regarding these prioritized records." *Id.*

10. Acting Chief Bender reported that the FBI inquired as to the status of its requests and, based on the information gathered, it "anticipates receiving responses on most of the pending requests within approximately 60 days." *Id.* ¶ 7.[3]

11. Finally, Acting Chief Bender identified that "[o]nce all consultation/coordination requests are fully resolved for a given set of potentially responsive documents—i.e., all affected OGAs have responded—RIDS will finalize the records for release of any reasonably segregable, non-exempt information and include them in the next scheduled interim response." *Id.* ¶ 7.

---

[3] The FBI is unable to determine precisely when the consultation process will be completed because "[t]he equities at issue in the relevant records vary greatly and the consulting agencies may, in some instances, require additional time to coordinate internally to determine whether and to what extent the relevant information can be disclosed under FOIA." Bender Decl., ¶ 7.

**Plaintiffs' Position**:

12.    The Court's Minute Order directed the FBI to *inquire into* "the feasibility of identifying the number and names of agencies to which documents were referred". 1st Minute Order dated Jan. 5, 2023. The Plaintiffs, at the time of the Status Conference when this topic was discussed and by the plain reading of the Court's instruction, understood this to mean the FBI was to contact each of the 25 OGAs to ascertain whether their identities could be revealed, the extent to which they are reviewing portions of responsive documents and when their respective review would be completed.

13.    Yet, that does not appear to have transpired. The FBI's declarant seemingly unilaterally took it upon himself to render a subjective single-agency determination on "feasibility" based on FBI policy and speculation that some unidentified "significant law enforcement, national security, and intelligence concerns" will somehow be implicated by identifying the OGAs. Bender Decl., ¶ 5, 14. While the declarant does state the "FBI has inquired with the OGAs as to the status of its requests regarding the potentially responsive FD-302s", *Id*. at ¶ 7, there is a contradiction therein when he notes only "[o]ne or more OGAs have already requested non-attribution *and it remains possible* that other OGA's may request non-attribution when they finish processing the relevant records.)(emphasis added). *Id*. at ¶ 5 fn.1.

14.    The FBI had *six weeks* to survey each of the 25 OGAs to specifically ask (1) do they request non-attribution (and if so why, perhaps to be explained to the Court through an *in camera* submission if necessary) and (2) when do they specifically anticipate completing their respective portion of the relevant materials. Those two questions largely remain unanswered. With respect to this specific issue, the FBI has essentially wasted nearly the last two months of the Court's, the Plaintiffs and the Public's time. We have virtually no more information today

5

than we did on January 5, 2023. Indeed, the Plaintiffs still have no information as part of this lawsuit notwithstanding the passage of fifteen months since the request was submitted and nearly fourteen months since the Complaint was filed. The most recent monthly notification from the FBI dated February 22, 2023, noted that "504 pages were reviewed and 0 pages are being released."

15.     The undersigned counsel are experienced FOIA litigators and more importantly maintain security clearances given they routinely represent federal employees within the FBI and no doubt likely the majority of the OGAs. The generic concerns expressed by the FBI are actually taken very seriously and at no time do the Plaintiffs wish to cause any harm to the United States. But these concerns do not outweigh the failure of the FBI to properly respond the Court's Minute Orders and the two questions set forth above.

16.     Respectfully, the Plaintiffs again request the Court order the FBI to identify the OGAs (or alternatively submit an *in camera* filing that the OGA requested anonymity and why) and to provide specific estimates from each OGA as to its intended completion date. *Hall v. CIA*, 668 F. Supp. 2d 172, 182 (D.D.C. 2010)(instructing agency to "take affirmative steps to ensure that its referrals are being processed"); *Hronek v. DEA*, 16 F. Supp. 2d 1260, 1272 (D. Or. 1998)(noting with respect to records referred to nonparty agencies, "the ultimate responsibility for a full response lies with the [referring] agencies"), *aff'd*, 7 F. App'x 591 (9th Cir. 2001). In fact, in *Scudder et al. v. CIA et al.*, Civil Action 16-1917 (D.D.C.)(TNM), a FOIA lawsuit being handled by the undersigned, the Court repeatedly required the primary Defendant to ascertain the answers to both questions and publicly file a chart with each Joint Status Report identifying the processing progress of each identified or unidentified. *See e.g.*, Exhibit "1". No less than something similar should be required here as well.

17. The Plaintiffs had the opportunity to review the Defendant's response below and, respectfully, our views differ as to what was being asked of it by the Court and the substantive interpretation of the Bender Declaration's contents. The Plaintiffs are not seeking to escalate this peripheral dispute to require a Motion and believe the Court clearly maintains judicial oversight authority over the processing of this litigation and can resolve it accordingly. Of course, Plaintiffs' counsel is more than willing to appear before the Court in a Status Conference to discuss these issues further.

**Defendants' Position:**

18. As identified above, Acting Chief Bender specifically addressed each element of the Court's Orders, *see* ECF 17-1, Bender Decl. ¶¶ 3-7, and Plaintiffs' argument to the contrary lacks merit. Similarly, Plaintiffs' characterization of the hearing as if it required something more than memorialized in the Court's Orders is incorrect. The Court directed the FBI to inquire as to the feasibility of providing the specific information. *Supra* ¶ 6.

19. Where feasible, Acting Chief Bender provided the information in his declaration, including by identifying that there are 25 OGAs with pending requests, and 727 pages of FD-302s under review, all of which pertain to Michael Cohen. *See supra* ¶¶ 7-11. The Bender Declaration also explained that based on its inquiry to each of the 25 OGAs, the FBI anticipates receiving responses to those requests within 60 days. *Id.*

20. And where not feasible, Acting Chief Bender explained why the disclosure is not feasible. Specifically, he explained that the names of the 25 OGAs could not be disclosed at this time because of "the sensitivities of the OGA equities in the records subject to the FBI's pending . . . requests" that include "significant law enforcement, national security, and intelligence

concerns implicated by the presence of particular IC or law enforcement agency information in them." ECF 17-1, Bender Decl. ¶ 5.

21. Acting Chief Bender did not "unilaterally . . . render a subjective single-agency determination . . . based on FBI policy and speculation," as Plaintiffs' claim; instead, he based his determination on the FBI's inquiry of (and information gathered from) the OGAs, as well as his assessment of the equities present in the specific documents at issue. *Id.*, ¶¶ 5-7. After considering the OGAs responses and the equities in the records, Acting Chief Bender explained that "the mere involvement of one or more OGAs may be determined to be a classified fact or disclosure of the OGA's involvement could reveal sensitive exempt information," and so, he determined it is not feasible to disclose the 25 names at this juncture. *Id.*

22. Plaintiffs point to Acting Chief Bender's first footnote, arguing it contradicts with his conclusion. But this argument is inapt. Footnote 1 of the Bender Declaration explains that "[o]ne or more OGAs have already requested non-attribution and it remains possible that other OGA's may request non-attribution when they finish processing the relevant records." *Id.*, n1. This footnote merely captures the ongoing consideration of these issues because at this juncture the various OGA's review and decision-making is still in progress (i.e., not yet concluded). This is not contradictory; Acting Chief Bender identifies throughout his declaration that this consultation/coordination process is ongoing and his determination relates only to disclosure of the 25 names at this juncture. Repeatedly the FBI has said it will release all non-exempt information after it has received back the relevant OGA responses. Once the responses are in, the FBI may determine one or more of the OGA names can be disclosed, depending on the FBI's review of all the relevant OGA responses.

23. By continuing to demand the OGA names—even after Acting Chief Bender identified that those names cannot be disclosed at this time—Plaintiffs effectively seek to compel the FBI to produce potentially sensitive, and perhaps classified information. There is no basis for such an order under FOIA, especially where disclosure could reveal information exempt from disclosure under FOIA and Plaintiffs have no right to receive it. As the D.C. Circuit has recognized, FOIA explicitly permits consultation with another agency that has a substantial interest in the determination of the request. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1118 (D.C. Cir. 2007); 5 U.S.C. § 552(a)(6)(B)(iii)(III). And the Department of Justice's regulations require the FBI to determine for each record it reviews whether a consultation is required and, for those records, "consult with that other component or agency prior to making a release determination." 28 C.F.R. § 16.4(d). For these reasons, Defendants oppose Plaintiffs' demand that the FBI produce them the names of the OGAs with outstanding consultation requests, via an *in camera* spreadsheet or otherwise. And Defendants submit that requiring such disclosures to the Court *ex parte* is not necessary, given that the FBI anticipates receiving responses from most of the OGA's with outstanding consultation/coordination requests within 60 days. The Court should permit the FBI to continue its standard consultation process and deny Plaintiffs' request.

24. Plaintiffs' further claim that the FBI "has essentially wasted nearly the last two months of the Court's, the Plaintiffs and the Public's time" is also incorrect. The FBI has been diligently processing the potentially requested records, sending them to OGAs for review when necessary, and repeatedly following up with those agencies for a final response. Plaintiffs again point to the fact that the FBI's processing has not yet resulted in the release of documents. But under the FOIA the FBI is required to *process* records, and if what it processes is non-responsive

or exempt, FBI is still satisfying its obligation to process records.  The FBI's continued work processing records can be seen in its recent, February 22, 2023 interim response, which identified it had reviewed another 504 pages, of which 7 pages were duplicates and 497 pages were sent for consultation/coordination to other agencies.  As this illustrates, the FBI's continued processing of potentially responsive records may lead it to request additional consultation/coordination from OGAs each month.  This Court should resist Plaintiffs' demand that the FBI produce to the Court a spreadsheet regarding its ongoing processing as it is an unnecessary invitation to wade into / oversee the details of this ongoing consultation/coordination process.

\* \* \* \*

25.     The Plaintiffs respectfully request the Court implement the relief requested above, or alternatively schedule a Joint Status Conference at its earliest convenience. Given the assertion by the Defendant that responses from the OGAs are expected to be received within 60 days, the Plaintiffs would separately request that this Court require the next joint status report to be submitted at that time, or on or before May 1, 2023.

26.     The Defendants request that the schedule in this case remain the same and that the parties' next joint status report be due in 90 days, on Tuesday, May 30, 2023.  *See* July 13, 2022 Minute Order.

Dated:  March 1, 2023            Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director, Federal Programs Branch

*/s/ Olivia Hussey Scott*
Olivia Hussey Scott

Senior Counsel, Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 11115
Washington, D.C. 20005
Telephone:  (202) 616-8491
Fax:  (202) 616-8470
Email:  Olivia.Hussey.Scott@usdoj.gov
*Counsel for Defendant*

*/s/ Mark S. Zaid*
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Ste. 700
Washington, D.C. 20036
(202) 498-0011
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com
*Counsel for Plaintiffs*