IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE JAMES MADISON PROJECT, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-00092-JMC |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |

## JOINT STATUS REPORT

The parties, by counsel, respectfully submit this Joint Status Report in response to the Court's Minute Orders, dated September 1, 2023, and January 22, 2024.

1. Plaintiffs seek records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, from the Federal Bureau of Investigation ("FBI") and the DOJ Office of the Inspector General ("OIG") related to the investigation and prosecution of Mr. Michael Cohen.

2. The OIG has completed its search and identified no responsive documents in its March 10, 2022 final response. The parties conferred shortly thereafter on questions raised by Plaintiffs at the time to see if they could narrow the scope of any dispute. On December 28, 2022, the OIG provided Plaintiffs with its response to Plaintiffs' most recent position. Since then, Plaintiffs have been considering OIG's response, which will be influenced by the FBI's final response.

3. The FBI's search for Plaintiffs' request identified approximately 47,000 potentially responsive pages,[1] and the FBI is currently processing these pages on a rolling basis

---

[1] The parties agreed not to search for or process any grand jury material.

at its standard rate of 500 pages per month.[2]  The FBI has provided Plaintiffs with 18 interim response letters covering its review of over 8,845 pages (identified as Bates numbers FBI(22-cv-0092)-0001 to FBI(22-cv-0092)-8345).  These 18 interim response letters identify for each month the number of pages reviewed, the FBI's determinations, if any, for those pages, and the number of pages for which the FBI requested consultation from Other Government Agencies ("OGAs").[3]

4.      Many of the potentially responsive pages reviewed have required the FBI to send consultation requests to multiple OGAs with overlapping equities.  *See* Declaration of Joseph E. Bender, the Acting Section Chief for the FBI's Record/Information Dissemination Section (RIDS), *see* ECF No. 17-1 ("Bender Decl."), ¶ 4.  For example, although the FBI cannot disclose to Plaintiffs at this juncture the entire list of OGAs with records subject to the FBI's consultation requests, *see* Bender Decl., ¶ 5, the United States has publicly identified that one of the investigations and prosecutions of Michael Cohen was jointly handled by the FBI, the U.S. Attorneys' Office for the Southern District of New York ("SDNY"), and the Internal Revenue Service ("IRS").[4]  Another investigation and prosecution was handled by the Office of Special Counsel Robert Mueller.

---

[2] At Plaintiffs' request, the FBI agreed to prioritize the processing of FD-302s, the forms used by the FBI to record investigative activity, without prioritizing at this point the attachments or media associated with FD-302s.  The parties have agreed to postpone FBI's processing of all attachments and media, with the plan to revisit the processing of attachments and media after the parties have a better sense of what those records might contain.

[3] The FBI's interim response letters were sent to Plaintiffs on the following dates: August 22, September 22, October 21, November 22, and December 22, 2022; January 20, February 22, March 22, April 21, May 22, June 22, July 21, August 22, September 22, October 20, November 22, and December 22, 2023; and January 22, 2024.

[4] *See e.g.,* Press Release, *Michael Cohen Pleads Guilty in Manhattan Federal Court to Eight Counts, Including Criminal Tax Evasion and Campaign Finance Violations* (Aug. 21, 2018), available at https://www.justice.gov/usao-sdny/pr/michael-cohen-pleads-guilty-manhattan-federal-court-eight-counts-including-criminal-tax (last accessed 2/9/2024).

5. At this juncture, the FBI can identify that SDNY and the IRS are among the many OGAs that it has sent requests for consultation in this case. Notably, nearly every potentially responsive page reviewed to date has required the FBI to request consultation. The consultation process so far has been necessarily iterative as two OGAs have asked the FBI questions about the background or context of the relevant records and some of the OGA responses have identified additional OGAs with equities in the potentially responsive pages, which have required the FBI to send subsequent requests for consultation.

6. On July 6, 2023, the FBI sent Plaintiffs its first supplemental interim response letter related to records that had been identified previously as subject to consult. The FBI is currently working to finalize its determinations for an additional set of records that had been subject to pending consultations until recently, and it expects to send the related supplemental interim response letter to Plaintiffs by March 8, 2024.

7. The Court's January 22 Order directed Defendants to "provide information about when any outside agencies expect to complete their review and its position on the Court increasing its processing rate for responsive records." Minute Order, dated January 22, 2024. Defendants provide the requested information below.

Information About the Expected Completion of OGA Consultations

8. In the parties' prior joint status reports, Defendants identified that the FBI has sent two sets of consultation requests to numerous OGAs from the beginning of its review through January 2024: (i) 40 consultation requests that the FBI had sent as of the date it submitted the Bender Declaration, in February 2023, *see* Bender Decl., ¶ 4; and (ii) an additional 24 consultation requests that the FBI sent between February 2023 and January 2024, *see* ECF 31, Joint Status Report. Combined, these requests sought consultations for 8,845 potentially

responsive pages from a total of 26 OGAs (including SDNY) that had possible FBI-identified equities in the subject pages. The FBI has now received responses from most of the OGAs that received requests for consultation before January 31, 2024. Of this set, the FBI is awaiting consultation responses on 7,283 of those pages pending for review by SDNY as well as 2,544 pages pending with the other OGAs.

9. SDNY is the OGA with the majority of the outstanding FBI requests for consultation, in part because the subject matter of Plaintiffs' request involves a joint investigation between the FBI and SDNY, among other investigations. As such, the FBI has identified that SDNY has possible equities in—and thus has sent to the Executive Office of U.S. Attorneys ("EOUSA") a request to consult on—nearly every potentially responsive page reviewed by the FBI, which is the FBI's standard process for its consultations related to U.S. Attorneys' Office equities. The FBI has had to resend its requests to some of the OGAs as part of its inquiries on the status, *see* ECF 23, Joint Status Report (filed July 31, 2023), ¶ 7, including that it resent some of its requests to EOUSA. In subsequent communications between the FBI, EOUSA, and SDNY in late Fall 2023, the agencies recognized that there was a miscommunication and SDNY had not yet received all the pages that the FBI has sent for consultation. SDNY and the FBI are now working directly to make sure SDNY obtains copies of all pages sent for consultation and, since November 2023, SDNY has provided responses to the FBI on approximately 2,000 of the pages subject to consult.

10. Of the approximately 2,000 pages reviewed since early November, SDNY has determined that approximately 1,500 pages pertain to other investigations and do not implicate SDNY equities, and SDNY identified in its response the OGA which should review those records. The approximately 500 pages that do implicate SDNY equities have required

painstaking and time-intensive review (by Assistant U.S. Attorneys who have other litigating and prosecutorial responsibilities) and coordination with multiple DOJ components. SDNY's initial review of those approximately 500 pages raised questions that require further discussion (with the FBI and other offices outside of SDNY) related to both responsiveness and applicable exemptions before SDNY's consultation response can be finalized. For these reasons, SDNY believes it will be able to review the remaining records for consultation in this case at the rate of 500 pages per month until it has finished. SDNY's specific pace of review, however, depends on the substance and equities presented in the particular records. SDNY anticipates that its review will identify additional pages that will require consultation with other OGAs, including both pages that do not implicate SDNY equities but instead require review by another OGA and pages that implicate the equities of both SDNY and other OGAs. Given SDNY's anticipated rate of review is 500 pages per month, the FBI anticipates the consults it requested prior to January 31, 2024, will be completed on a rolling basis in approximately 15 months.

11. The FBI also expects its ongoing review will continue to identify additional pages that require it to seek consultation from OGAs, including from SDNY. Thus, at this point, the FBI is unable to estimate when all of the consultations will be completed for this case.

<u>FBI's Position on the Court Increasing its Processing Rate</u>

12. The FBI respectfully requests that the Court allow the FBI to continue processing records in this case at its standard rate of 500 pages per month. The FBI has been diligently processing records for this case—meeting its expected standard review rate of 500 pages per month, sending requests for consultation to OGAs on a rolling basis, as needed, repeatedly following up on the pending consultation requests, and producing interim response letters for Plaintiffs regarding the FBI's ongoing review. Also, as the OGA consultations are fully

resolved, the FBI is committed to promptly finalize its determinations as to the potentially responsive pages and provide Plaintiffs with a supplemental interim response. For this case, the FBI intends to devote sufficient resources to finalize its determinations as the OGA consultations are resolved without reducing its processing rate for the potentially responsive records that still need to be reviewed in the queue—i.e., the FBI will finalize its determinations on the consulted potentially responsive pages in addition to its continued processing of 500 pages a month.

13.     "FOIA explicitly permits 'consultation . . . with another agency having a substantial interest in the determination of the request." *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1118 (D.C. Cir. 2007); *see also* 5 U.S.C. § 552(a)(6)(B)(iii)(III) (provides that an agency can extend time to respond when it needs to consult with another agency). And here, "[t]he equities at issue in the relevant records vary greatly," and based on SDNY's review to date, "the consulting agencies" have in fact "require[d] additional time to coordinate internally," as well as with other components, "to determine whether and to what extent the relevant information can be disclosed under FOIA." Bender Decl., ¶ 7. The FBI's review so far has required it to send over 60 separate requests for consultation to dozens of different OGAs. Given the FBI's ongoing work, the volume of pages left to review, and the FBI's need to receive responses on pending and any future OGA consultation requests, the FBI respectfully requests that the schedule in this case remain the same with the parties' filing joint status reports every 30 days.

Plaintiffs' Response

14.     The Plaintiffs are obviously at a complete disadvantage to be able to substantively and properly respond to the FBI's descriptions having little insight or visibility into the ongoing consultation process. To be clear, more than two years into this litigation the Plaintiffs have

received zero pages of non-exempt information, notwithstanding agreements as to narrowing the search and prioritization of processing of specific records. Notwithstanding the above statics, there is no explanation from the FBI that would permit this Court or the Plaintiffs to determine the legitimacy or necessity of the assertion that "nearly every potentially responsive page reviewed to date has required the FBI to request consultation." (¶5). The FBI claims this is its "standard" process (¶9), but provides no guidance or elaboration as to why or under what circumstances different actions could be properly pursued. As the Defendant cited above, "FOIA explicitly permits 'consultation . . . with another agency having a *substantial interest* in the determination of the request." *Sussman*, 494 F.3d at 1118. Not "an interest", or "any interest", or a "common interest" or but a "substantial interest". Yet, FBI instead claims consultation is its "standard process", thereby significantly delaying every aspect of this case. No wonder 75% of the pages referred to the SDNY for consultation due to FBI's "standard process" were deemed to not even contain SDNY equities. And while SDNY claims that this process has "required painstaking and time-intensive review", there is no basis or explanation to justify this need, particularly when, so far as the public is aware, none of the potentially responsive information pertains to open cases.

15.     As another example of the inefficiency of this process as well as the unfair inequities to the Plaintiffs, as noted above in footnote 2, is that despite the fact that "the FBI agreed to prioritize the processing of FD-302s, the forms used by the FBI to record investigative activity, without prioritizing at this point the attachments or media associated with FD-302s", not a single sentence has been released. The FD-302s memorialize the interviews of, among others, Michael Cohen, whose privacy waiver was submitted to the FBI. These documents solely belong to the FBI and there is no reasoning provided as to why information obtained from Mr. Cohen

and memorialized in a specific FBI document would then need to be shared, reviewed and require approval for release by any other federal agency/component. At a minimum, the FBI should be required to explain why segregability cannot be applied at this stage and partial releases of non-exempt information occur, while still protecting any remaining information that necessitates review by others due to alleged equities of their interests.

16. The Plaintiffs and their undersigned counsel are experienced and frequent FOIA litigators. They empathize with the lack of resources and manpower faced by the Defendant and the consulting agencies, but that does not excuse any failure to comply with the spirit and the letter of the law. While the Plaintiffs continue to object to the FBI's 500 page monthly processing rate, notwithstanding the understanding that numerous judges within this District have permitted it, that does not mean every other agency/component is justified or entitled to the same rate. Respectfully, this should not become – absent Congressional action incorporating such a policy into statute – the processing standard that applies everywhere simply based on a request by government counsel. At a minimum, the consulting agencies should be required to – either through their own agency declarations or via Defendant's counsel – specifically describe their involvement, consultation policy and anticipated completion date so that this Court and the Plaintiffs can properly consider that information.

\* \* \* \*

17. The Court has set a hearing in this case for Tuesday, February 13, 2024, and the current schedule calls for submission of joint status reports every 30 days, *see* Minute Order, dated September 1, 2023. The parties' next report is thus due on March 8, 2024. The Plaintiffs, however, additionally respectfully request that this Court impose tighter, reasonable and specific processing deadlines for the release of non-exempt information.

Dated: February 12, 2024					Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director, Federal Programs Branch

*/s/ Olivia R. Hussey Scott*
Olivia Hussey Scott
Senior Counsel, Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 11115
Washington, D.C. 20005
Telephone: (202) 616-8491
Fax: (202) 616-8470
Email: Olivia.Hussey.Scott@usdoj.gov
*Counsel for Defendant*


*/s/ Mark S. Zaid*
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Ste. 700
Washington, D.C. 20036
(202) 498-0011
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com
*Counsel for Plaintiffs*